UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE LAFAVE SMITH, Personal
Representative for the Estate of Derek
Kessel, MARIE KESSEL, and ARNOLD
KESSEL,

        Plaintiffs,

v.

PORT HOPE SCHOOL DISTRICT, LAWRENCE
ISELER, SAM INGRAM, CHRIS JAHN,
RAYMOND SCHULTE, KAREN GUST, CASEY
JAHN, MIKE GUST, DAVID KOGLIN, BYRON
S. BELT, MATT WOODKE, MICHAEL H.
BOWMAN, DON PITTS, STAN SHIPP, JUDY
LUBESKI, MATT KOGLIN, JOEY WOODKE,
JOE GUST, SHAWN GUST, DUSTIN WEISS,
JOSH FOSDICK, JUSTIN ABRAHAM, and
JEFF ALES,

        Defendants.
_____/

Case Number 05-10267
Honorable David M. Lawson

**OPINION AND ORDER GRANTING IN PART MOTION FOR JUDGMENT ON
THE PLEADINGS BY DEFENDANTS PORT HOPE SCHOOL DISTRICT,
SAM INGRAM, CHRIS JAHN, RAYMOND SCHULTE, KAREN GUST, CASEY JAHN,
MIKE GUST, DAVID KOGLIN, BRYON S. BELT, MATT WOODKE, MICHAEL
H. BOWMAN, DON PITTS, STAN SHIPP, JUDY LUBESKI, AND LAWRENCE
ISELER, DISMISSING FEDERAL CLAIMS WITH PREJUDICE, AND
DISMISSING STATE LAW CLAIMS WITHOUT PREJUDICE**

In this unfortunate case, a complaint was filed alleging that Derek Kessel, a mentally

retarded student attending Port Hope High School in Huron County, Michigan, was assaulted on two

occasions by fellow students. The first incident involved a firearm in a school parking lot, and the

second incident took place in a locker room when several members of the basketball team allegedly

held Derek down and attempted to sodomize him with a wooden dowel. The complaint alleges nine

counts against the Port Hope School District and several of its officials, and also states claims

against the students involved in the assault. Derek later was killed in an automobile accident, and his estate's personal representative was substituted as the plaintiff, along with his parents. The non-student defendants have filed a motion for judgment on the pleadings or in the alternative for summary judgment. The plaintiffs responded and the Court heard oral argument in open court on May 22, 2006. The parties have filed supplemental briefs, and the matter is ready for decision. The Court finds that the plaintiffs have not stated plausible claims based on federal law. Therefore, the Court will dismiss the federal claims with prejudice, decline to exercise supplemental jurisdiction over the state law claims, and dismiss those claims without prejudice.

I.

Little or no discovery has been taken in this case, and the following facts come mostly from the first amended complaint filed on November 26, 2005. According to the amended complaint, on November 15, 2004, Derek Kessel, a mentally retarded student, reported to basketball practice for defendant Port Hope School's varsity squad. Classes were not in session that day because of teacher meetings. After practice, while walking to his car, Kessel was approached by defendant Matthew Koglin, a fellow student and teammate, who asked whether Kessel was going hunting later in the day. November 15, of course, is solemnly observed by Michigan deer hunters as the first day of firearm season. Koglin got into a car with another student and teammate, defendant Matt Woodke. After entering the car, Koglin reached behind the front seat, removed a firearm, and reaching over Woodke pointed the firearm at Kessel as Kessel was climbing in to his vehicle.

Kessel claims that he heard the gun click as Koglin laughed and stated, "See mine?" Am. Compl. at ¶ 38. At that point, Woodke and Koglin exited the parking lot of the high school. Upon returning home, Kessel told his parents of the incident with Koglin and Woodke and how he

believed he was going to be shot. He also asked his parents not to tell school officials because Koglin and Woodke were his friends and teammates.

On February 15, 2005, some months later, Kessel states that he entered the locker room after basketball practice. Defendants Koglin, Woodke, Joe Gust, Shawn Gust, Jeff Ales, Dustin Weiss, Justin Abraham, and Josh Fosdick were present in the room. The amended complaint alleges that Abraham took up a position outside the locker room as lookout while Ales knocked Kessel to the floor and sat across Kessel's chest. Fosdick and Koglin then "attempted to hold Kessel's hips while Defendant Weiss attempted to sodomize Kessel with a large wooden dowel the size of a paper towel holder" by trying to push the dowel through Kessel's underpants. Compl at ¶ 44. Kessel tried to extricate himself from the situation but was unable to because a student was sitting on his chest. Kessel eventually broke free, and the other student defendants laughed when Weiss threw the dowel.

Kessel states that fellow students Sean Gust, Joe Gust, and Woodke were present when this incident occurred, laughed, and did not intervene to stop the alleged assault and battery. Kessel eventually sought to leave the locker room after the incident and after he had chased the defendants out wielding the dowel. The student defendants ran past the coach's office when they left the room.

Kessel informed his parents of the incident when he returned home that evening and told them that his buttocks area was in some pain. Kessel did not want to go to the doctor because he was embarrassed. As before, Kessel pleaded with his parents not to inform school authorities about the event.

About a week later, the school hosted a parents' night on February 24, 2005. Kessel's parents attended and informed defendant Judy Lubeski, a teacher at the school, of the locker room incident. Lubeski left Kessel's parents with the impression that the school would investigate.

According to the amended complaint, Lubeski spoke with defendant Michael Bowman, the school's principal, to request an investigation, but did not contact law enforcement officials. Bowman also did not contact law enforcement authorities.

Somehow, although not explained by the amended complaint, the Huron County, Michigan sheriff's department became aware of the locker room incident and approached Kessel's mother. Kessel's mother told police that she had not reported the incident because of the humiliation it had caused her son. At that point, officers apparently asked for and received permission from Kessel's mother to investigate the matter.

On July 5, 2005, Kessel's parents requested a private session of the school board to discuss the firearm and locker room incidents. As a result, the amended complaint states, Bowman, defendants Byron Belt, the superintendent, Chris Jahn, president of the school board, Casey Jahn, present treasurer of the school board, Raymond Schulte, vice president of the school board, Karen Gust, recording secretary of the school board, Michael Gust, school board trustee, David Koglin, school board trustee and former president, and Stan Ship, school board trustee, became aware of those incidents. These individuals did not contact law enforcement officials or arrange for an investigation. At one point, Kessel's parents threatened to move Kessel to a different school district, to which Schulte responded "that it wouldn't matter because the school would just be losing one more retarded child." Am. Compl. at ¶ 62.

On July 19, 2005, Bowman contacted Kessel's parents to request a meeting with Kessel. Kessel and his parents met with Bowman and defendant (superintendent) Byron Belt, at which time Kessel was interviewed about the firearm incident but not about the locker room assault.

The amended complaint further alleges that on July 22, 2005, Chris Jan received a confidential letter informing him of the necessary steps to mitigate any liability on the school's behalf. This letter was circulated, and none of the school official defendants took any of the recommended steps to mitigate liability. No disciplinary action was taken against the student defendants, according to the plaintiffs.

Kessel's parents again met with superintendent Belt on August 15, 2005, but Belt refused to talk about the locker room incident and focused instead on the firearm incident. The amended complaint states that Belt told Kessel's parents that Kessel was at fault because Kessel failed to inform the school authorities of the incident.

On August 22, 2005, Kessel's parents sent a letter to the school seeking redress for its alleged inaction and that of the school board. Apparently, the letter cited violations of school rules and handbook, and requested sanctions against the students who allegedly perpetrated the assault. The school responded on August 30, 2005, indicating that it would investigate the allegations.

On September 7, 2005, the Huron County prosecuting attorney wrote a letter to the parties and stated that the sheriff's investigation had substantiated the incidents, but the office had declined to prosecute because no criminal conduct was involved. The letter suggested that the school had appropriate processes to discipline misbehaving students and was in the best position to do so.

The school completed its investigation on September 13, 2005. In light of the county prosecutor's finding that no criminal activity had occurred, the school concluded that the incidents were "horseplay." Am. Compl. at ¶ 72. The plaintiffs allege that no disciplinary action was taken against the defendants. Ultimately, Kessel's parents enrolled him in a different high school.

Thereafter, however, school board vice-president Schulte approached Kessel's father at work and advised Kessel's father to stop discussing the locker room incident and "drop the whole thing." Am. Compl. at ¶ 75. The amended complaint states that Schulte was representing the school when he issued this "veiled threat." *Ibid.* The factual portion of the amended complaint concludes as follows:

> Defendants Port Hope, Bowman, Belt, Matt Woodke, Pitts, Jahn, Schulte, Karen Gust, Casey Jahn, Mike Gust, David Koglin and Stan Shipp observed and knew or should have known that Plaintiff Kessel was the victim of verbal and physical harassment and intimidation, but they acted with deliberate indifference thereby proximately causing the continuing violation of Plaintiff's person, well-being and his rights as set forth hereinafter.

Am. Compl. at ¶ 76.

On October 11, 2005, the plaintiffs, Kessel and his parents, filed suit. The complaint was amended on November 26, 2005, following Kessel's death in an unrelated automobile accident, to remove Kessel as a plaintiff and add the personal representative of his estate, Denise LaFave Smith. As amended, the complaint alleges nine counts against various defendants. Count one claims constitutional violations of the Fifth and Fourteenth Amendments under 42 U.S.C. § 1983 against the school, Lubeski, Bowman, Belt, Chris Jahn, Schulte, Karen Gust, Casey Jahn, Mike Gust, David Koglin, Stan Shipp, Lawrence Iseler, Sam Ingram, and Pitts. Count two alleges substantive due process deprivations against the school for failure to train and supervise staff to prevent foreseeable sexual and physical abuse.

Count three alleges a violation of the Individuals with Disabilities in Education Act against the school, Bowman, Belt, Chris Jahn, Schulte, Casey Jahn, Mike Gust, Karen Gust, David Koglin, and Shipp. Count four accuses the school, Bowman, Belt, Chris Jahn, Schulte, Casey Jahn, Mike Gust, Iseler, Ingram, and Shipp of violating the Gun Free School Act, 20 U.S.C. § 3511, and

Michigan Compiled Laws section 380.1311. Count five claims that student defendants Woodke, Koglin, Abraham, Shawn Gust, and Joe Gust assaulted Kessel, a tort under Michigan's common law. Count six alleges that student defendants Koglin, Weiss, Fosdick, and Ales committed the tort of battery against Kessel. Count seven alleges false imprisonment against Koglin, Woodke, Joe Gust, Shawn Gust, Weiss, Ales, Abraham, and Fosdick.

Count eight accuses the school, Iseler, Ingram, Belt, Bowman, Matt Woodke, Pitts, Lubeski, Chris Jahn, Casey Jahn, Karen Gust, Mike Gust, David Koglin, and Shipp of gross negligence under state law. Finally, count nine alleges that the school, Iseler, Ingram, Belt, Bowman, Matt Woodke, Pitts, Lubeski, Chris Jahn, Schulte, Karen Gust, Mike Gust, Casey Jahn, David Koglin, and Shipp failed to protect Kessel by following school by-laws.

On December 12, 2005, the non-student defendants, Sam Ingram, Chris Jahn, Raymond Schulte, Karen Gust, Casey Jahn, Mike Gust, David Koglin, Bryon S. Belt, Matt Woodke, Michael H. Bowman, Don Pitts, Stan Shipp, Judy Lubeski, Port Hope School District, and Lawrence Iseler, filed a motion for judgment on the pleadings or alternatively for summary judgment. The plaintiffs have file a response in opposition, and the Court heard oral argument on May 22, 2006. Thereafter, the parties filed supplemental briefs. On June 27, 2007, this Court temporarily stayed this matter as to defendant Justin Abraham under the Service Members Civil Relief Act, 50 U.S.C. app. § 501 *et seq.* Because the present motion does not affect that party, the Court will proceed with decision.

II.

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on the ground that the complaint does not state a cognizable claim is reviewed under the standards that govern motions brought under Rule 12(b)(6). *See* Fed. R. Civ. P 12(c); *Vickers v. Fairfield Medical*

*Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006); *Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 511-12 (6th Cir. 2001). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Ibid.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S.Ct. at 1964-65 (citation omitted) (alteration in original). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (emphasis in original) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

The non-student defendants also have moved in the alternative for summary judgment. A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotes omitted).

As noted earlier, there has been little or no discovery in this case. "It is well-established that the plaintiff must receive 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment. *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 257); *see also White's Landing Fisheries, Inc. v. Buchholzer,* 29 F.3d 229, 231-32 (6th Cir.1994) ( declaring that, in light of *Anderson* and *Celotex*, "a grant of summary judgment is improper if the non-movant is given an insufficient opportunity for discovery"). In this case, the Court can assess the plaintiff claims by referring exclusively to the allegations in the amended complaint. Therefore, the Court will not evaluate the claim under Rule 56 and will confine its analysis to the standard governing motions under Rule 12(c).

A.

Counts one and two of the amended complaint allege constitutional violations against the school district and its officials for their failure to take remedial action to prevent the dangers to Derek Kessel caused by the student defendants. The plaintiffs state that they can establish a long history and practice of non-enforcement of school policies. According to the plaintiffs, this history of failure to act by the school administration is the very reason the plaintiffs believed that they had no one to turn to when the first incident occurred. In fact, they claim they would have reported the

first incident had they been able to expect a fair investigation and appropriate action. It is not clear to the Court how these claims invoke the protection of the Fifth Amendment; but it is apparent that the plaintiffs rely heavily on the concept of substantive due process embodied in the Fourteenth Amendment, which they plead via 42 U.S.C. § 1983.

"The standard for establishing that executive-branch officials (as well as executive-branch agencies) have violated an individual's substantive due process rights is not an easy one to satisfy. '[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm.'" *Mitchell v. McNeil*, 487 F.3d 374, 376 (6th Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998)). "What seems to be required is an intentional infliction of injury . . . or some other governmental action that is 'arbitrary in the constitutional sense.'" *Stemler v. City of Florence*, 126 F.3d 856, 869 (6th Cir. 1997) (quoting *Lewellen v. Metropolitan Gov't of Nashville & Davidson County*, 34 F.3d 345, 351 (6th Cir. 1994)). Therefore, "[t]o state a cognizable substantive due process claim, the plaintiff must allege conduct intended to injure in some way unjustifiable by any government interest and that is conscience-shocking in nature." *Mitchell*, 487 F.3d at 377 (internal quotes omitted).

The school district defendant argues that it is entitled to summary judgment on the plaintiffs' constitutional claims because there is no policy or practice that gives rise to municipal liability under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978), and the individual non-student defendants argue that they are entitled to qualified immunity on the section 1983 claims. These two arguments converge in the proposition that no constitutional violation is made out against any of the government defendants. The defense of qualified immunity must be analyzed in two steps, with the first step calling for a determination whether the state actor's conduct violated the

plaintiff's constitutional rights. *Lyons v. City of Xenia*, 417 F.3d 565, 571 (6th Cir. 2005) (citing *Saucier v. Katz,* 533 U.S. 194 (2001), which "instructed lower courts initially to consider whether 'the facts alleged show the officer's conduct violated a constitutional right'"). And although a municipal defendant cannot be found responsible for a constitutional violation solely on the basis of *respondeat superior*, *Hirmuz v. City of Madison Heights*, 469 F. Supp. 2d 466, 484 (E.D. Mich. 2007) (citing *Monell*, 436 U.S. at 691), there can be no municipal liability without a finding of a constitutional violation on the part of at least one state actor, *Cartwright v. City of Marine City*, 336 F.3d 487, 495 (6th Cir. 2003) (holding that "[b]ecause the City can only be held liable if there is a showing of liability on the part of its officials, the determination that the officers did not violate [the plaintiff's] constitutional rights resolves plaintiff's claim against the City as well"). Therefore, the Court will examine the amended complaint to determine if it pleads a violation of the Constitution or federal law by the non-student defendants.

Liability under section 1983 is predicated on a violation of the Constitution or laws of the United States perpetrated by someone acting under color of state law. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The plaintiffs do not allege that any of the school district defendants actually committed the assaults on Derek Kessel. Rather, the amended complaint plainly states that it was fellow students that were the culprits. The school district defendants are liable, the plaintiffs contend, because they failed to prevent the harm to Derrick through their lax and inconsistent enforcement of school district policies.

As a general rule, "[t]he Due Process Clause does not 'require[] the State to protect the life, liberty, and property of its citizens against invasion by private actors.'" *Koulta v. Merciez*, 477 F.3d 442, 445 (6th Cir. 2007) (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S.

189, 195 (1989)).  In this Circuit, there are two exceptions to this rule.  The first one provides that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."  *DeShaney,* 489 U.S. at 199-200.  The second exception is known as the "state-created danger" rule, and it is based on the idea that when the state "cause[s] or greatly increase[s] the risk of harm to its citizens . . . through its own affirmative acts," it has created a "special danger" for which it assumes a duty to protect its citizens from that risk.  *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998).

The plaintiffs' claims do not fall within the first exception.  It has been clearly established that even if students are required by law to attend school, there is no special relationship within the meaning of the *DeShaney* rule that arises from compulsory school attendance.  *Doe v. Claiborne County*, 103 F.3d 495, 510 (6th Cir. 1996) (holding that "in loco parentis status or a state's compulsory attendance laws do not sufficiently 'restrain' students to raise a school's common law obligation [to create and maintain a safe environment for its students] to the rank of a *constitutional* duty");  *see also Sargi v. Kent City Bd. of Educ*., 70 F.3d 907, 911 (6th Cir. 1995).  In *Soper v. Hoben*, 195 F.3d 845 (6th Cir. 1999), a case cited by the defendants, which provides some guidance in the present action, the court of appeals held that a school district and its employees did not have a "special relationship" with a mentally retarded female student who was vulnerable to sexual assaults by male students, and therefore the defendants had no duty to protect the student from a rape that occurred at school.  The court declared: "[t]he purpose of the Due Process clause is 'to protect people from the State, not to ensure that the State protect[s] them from each other.'" *Soper*, 195 F.3d at 853 (quoting *DeShaney*, 489 U.S. at 196).

-12-

To recover under the state created danger exception, the plaintiffs must plead and prove the following:

> "(1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff."

*Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006) (quoting *Cartwright*, 336 F.3d at 493). The amended complaint alleges that the school district defendants consistently failed to enforce school policies that had been in place to ensure the protection of students. As a result, they claim, the acts of bullying alleged in the amended complaint took place, and no subsequent discipline of the perpetrators provided any relief to the plaintiffs' decedent. These allegations do not constitute a claim that the school district committed an affirmative act. Rather, the failure to enforce school district policy amounts to nothing more than a failure to act.

The affirmative act element of the state created danger exception to the *DeShaney* rule was discussed by the court of appeals in *McQueen v. Beecher Community Schools*, 433 F.3d 460 (6th Cir. 2006). In that case, the parents of a student who was fatally shot by another student brought suit against the school not just for failing to prevent the death, but for affirmatively increasing the risk that the student would be injured. The court did not explicitly define the term, but it held that leaving children unsupervised did not amount to an affirmative act that created or increased a risk of harm. *Id.* at 466. Commenting on the tragedy that befell young Joshua DeShaney, the court stated that there was no affirmative act committed by the state in that case, noting "that while the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *Id.* at 464

(internal quotations omitted). In the case of Veronica McQueen's daughter, the court found that when the school teacher left the classroom after which a fellow student fatally shot the young girl, "there was no affirmative act that created or increased the risk because the victim would have been in about the same or even greater danger even if the state officials had done nothing." *Id.* at 466.

Similarly, in this case the plaintiffs allege only that the school district personnel failed to enforce its anti-bullying policies, did not investigate the Kessels' complaint when brought to the attention of school administrators, and failed to discipline properly the student defendants involved in the assault incidents. There is no affirmative act alleged here that would have rendered Derek more vulnerable to the assaultive behavior of the other students. The amended complaint does not contain facts from which one could infer the first element of the state created danger exception.

As to the second element, however, the amended complaint comes up short as well. There is no suggestion that the school district's laxity concerning policies intended to ensure safe passage for students was directed specifically at Derek. At most, the plaintiffs allege that enforcement practices favored student-athletes; but there is no claim that this favoritism comes at the expense of other specific students, particularly Derek. The court of appeals has emphasized that "a special danger exists [only] 'where the state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large.'" *McQueen*, 433 F.3d at 468 (quoting *Kallstrom,* 136 F.3d at 1066). The court of appeals has consistently held that poor efforts at enforcement of public safety regulations carries a risk to the public at large and not a specific person, thereby failing to satisfy the second element of the state created danger exception. *See Schroder v City of Fort Thomas*, 412 F.3d 724, 729 (6th Cir. 2005) (holding that city's and officials' creation of a street and the management of traffic conditions posed a general traffic risk to pedestrians and other

automobiles); *Jones v. Union County*, 296 F.3d 417, 431 (6th Cir. 2002) (failure to serve an *ex parte* personal protection order in a timely manner did not place plaintiff specifically at risk); *Jones v. City of Carlisle*, 3 F.3d 945, 950 (6th Cir. 1993) (concluding that city's allowing an epileptic to maintain a driver's license posed a danger to any citizen on the streets); *Janan v. Trammell*, 785 F.2d 557, 560 (6th Cir. 1986) (finding that release of a parolee only endangered plaintiff as a member of the public at large).

The third element of the state created danger exception requires a showing of the requisite degree of culpability on the part of the government defendants. The Sixth Circuit has concluded that the required mental state is one of deliberate indifference. *Ewolski v. City of Brunswick*, 287 F.3d 492, 513 (6th Cir. 2002). "Deliberate indifference has been equated with subjective recklessness, and requires the § 1983 plaintiff to show that the state 'official knows of and disregards an excessive risk to [the victim's] health or safety.'" *Ibid.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The plaintiffs have alleged that the school officials took no remedial action after being notified of the assaults, and one of the school board members even threatened Derek's father when he persisted in complaining about the locker room incident. Although the plaintiffs may have trouble proving this element, since the school district officials were not notified until well after both incidents had occurred, the plaintiffs do allege that the failure to attend to their complaints in a proper manner caused them to remove Derek from school in that district. The Court believes, therefore, that the amended complaint alleges the third element of the state-created danger exception.

However, because the amended complaint does not allege all of the necessary elements of a claim under the Fourteenth Amendment, counts one and two must be dismissed against the school

district defendants for failure to state a violation of a constitutional right, and therefore failure to state a claim.

B.

The plaintiffs allege in count three of the amended complaint that the school district defendants' failure to supervise students and train personnel, which led to the assaults on Derek, violated Derek's right to a free appropriate public education (FAPE) guaranteed to him by the Individuals with Disabilities in Education Act, 20 U.S.C. § 1400 *et seq.* (IDEA). "The IDEA was designed to give children with disabilities a free appropriate public education designed to meet their unique needs." *Burilovich v. Bd. of Educ. of Lincoln Consol. Sch.*, 208 F.3d 560, 566 (6th Cir. 2000). A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 188-89 (1982).

"There are two parts – procedural and substantive – to a court's inquiry in IDEA suits." *Nack ex rel. Nack v. Orange City School Dist.*, 454 F.3d 604, 609 (6th Cir. 2006). "First, the court must determine whether the school system has complied with the procedures set forth in the IDEA. Second, the court must assess whether the IEP developed through those procedures was reasonably calculated to enable the child to receive educational benefits." *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 853 (6th Cir. 2004).

The plaintiffs have not alleged a plausible claim in their amended complaint that the school district defendants have violated either the procedural or substantive aspects of the IDEA. They have alleged generally that school officials failed to train employees and were derelict in enforcing

rules.  But none of these complaints is focused on the IEP developed for Derek.  The amended complaint generally alleges that allowing assaults to occur on school grounds interfered with Derek's education, and that cannot be denied.  But assaults bear no relation to Derek's education plan, did not constitute school-imposed discipline, and do not fall within the purview of the IDEA. As the district court explained in *Franklin v. Frid*, 7 F. Supp. 2d 920 (W.D. Mich. 1998), " [a] disabled child who is sexually abused or severely beaten by a teacher or school official – acts having no relationship to the appropriate education of a disabled child – would not come within the purview of the IDEA.  On the other hand, where the alleged acts constitute discipline and not random acts of violence, courts have generally held that claims based upon such conduct fall within the IDEA." *Id.* at 925 (citations omitted); *see also Covington v. Knox County School System*, 205 F.3d 912, 916 (6th Cir. 2000).

Even if the amended complaint could be viewed as stating a claim falling within the IDEA, it would have to be dismissed because the plaintiffs have not alleged that they exhausted their administrative remedies, which the IDEA requires; nor have they alleged that they are excused from the exhaustion requirement.  *Covington*, 205 F.3d at 915-16

The amended complaint does not state a claim under the IDEA, and count three must be dismissed.

C.

Count four of the amended complaint is based on the Gun-Free Schools Act.  This claim is untenable because that statute does not create an individual right that can be enforced against government actors under section 1983.  The Gun-Free School Act, 20 U.S.C. § 7151, cited incorrectly in the plaintiffs' amended complaint as 20 U.S.C. § 3511, states in part:

> Each State receiving Federal funds under any subchapter of this chapter shall have in effect a State law requiring local educational agencies to expel from school for a period of not less than 1 year a student who is determined to have brought a firearm to a school, or to have possessed a firearm at a school, under the jurisdiction of local educational agencies in that State, except that such State law shall allow the chief administering officer of a local educational agency to modify such expulsion requirement for a student on a case-by-case basis if such modification is in writing.

20 U.S.C.A. § 7151(b)(1). This statute places requirements on states receiving federal funds with respect to local legislation restricting guns on school property and also imposes reporting requirements. The legislation was enacted pursuant to Congress's authority under the Spending Clause.

Challenges based on whether federal programs can be privately enforced frequently arise in the context of legislation enacted pursuant to Congress's spending authority. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 279-82 (2002). Courts have held that such legislation can give rise to such rights enforceable under section 1983. *See Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990). In other circumstances, a right of action can be implied even when no state actor is involved, unlike here. *See, e.g. Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979) (holding that a medical school applicant had right under Title IX of the Education Amendments of 1972 to pursue a private cause of action against private universities). But as the Supreme Court has observed, "'[i]n legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State.'" *Gonzaga Univ.*, 536 U.S. at 280 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 28 (1981)).

The Supreme Court has held that the critical question that is determinative of whether such legislation can be enforced privately is "whether or not Congress intended to confer individual rights

upon a class of beneficiaries." *Gonzaga Univ.*, 536 U.S. at 285. In *Gonzaga University*, the Supreme Court acknowledged that confusion may have resulted from the conflation of its cases dealing with whether a statute created an implied private right of action with those cases determining whether there were private rights enforceable under section 1983. The Court held, however, that "in either case we must first determine whether Congress intended to create a federal right." 536 U.S. at 283. "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefitted.'" *Id.* at 284 (citing *Cannon,* 441 U.S. at 692, n.13). The Court stated that the statute unambiguously must confer "rights," not merely "benefits." *Id.* at 283. "If Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms." *Id.* at 290. "Where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Id.* at 286.

The Gun-Free School Act contains no rights-conferring language, and it is not phrased in terms of a person benefitted. There is no suggestion that Congress intended to create a federal right, and therefore the legislation will not provided a basis for an action under section 1983. The plaintiffs are free to allege this statute as a source of a duty under a negligence theory – which they have – but they cannot claim violations of that Act as giving rise to an independent right of action. Count four of the amended complaint, to the extent it is based on the Gun Free Schools Act of 1994, must be dismissed.

D.

The plaintiffs have alleged several state-law claims against all the defendants as well. This Court has jurisdiction over those claims since they form part of the same controversy as the federal claims stated in the first four counts of the amended complaint. *See* 28 U.S.C. § 1367(a). However, section 1367 also provides:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if–
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). When a plaintiff's federal claims have been dismissed for want of jurisdiction, all other state-law claims must be dismissed. *See Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996). However, if the federal claims were dismissed on the merits, the question of whether to retain jurisdiction over the state-law claims rests within the Court's discretion. *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002). Thus, pursuant to this section 1367(c), the Court has the discretion to decline to exercise supplemental jurisdiction over state-law claims in this case. *Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279 (6th Cir. 2000). The Court believes that it is appropriate to dismiss the state-law claims and leave the plaintiffs to their remedies, if any, in state court, particularly when the claims are made against school district employees, in addition to the private defendants. The case is best handled by the state courts under the applicable state laws dealing with state employee negligence and common-law negligence.

III.

The Court finds that the plaintiffs have failed to state cognizable claims against the non-student defendants based on federal law.  The Court declines to exercise supplemental jurisdiction over the state-law claims.  The Court therefore will lift the stay issued as to defendant Justin Abraham under the Service Members Civil Relief Act for the purpose of dismissing the action against him without prejudice.  The Court will dismiss the federal claims against the school district defendants with prejudice and the balance of the claims against all defendants without prejudice.

Accordingly, it is **ORDERED** that the defendants' motion for judgment on the pleadings [dkt # 28] is **GRANTED IN PART**.

It is further **ORDERED** that the order staying proceedings as to defendant Justin Abraham entered June 27, 2007 is **VACATED**.

It is further **ORDERED** that counts one, two, three, and that part of count four of the amended complaint based on the Gun Free Schools Act are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the plaintiffs' state-law claims are **DISMISSED WITHOUT PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  August 6, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 6, 2007.

s/Felicia M. Moses
FELICIA M. MOSES